UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

LELIS Y. FLORES-SILVA,

    Plaintiff,

v.

KENNETH McCLINTOCK-HERNANDEZ, et. al.,

    Defendants.

Civil No. 10-2287 (JAF)

**OPINION AND ORDER**

Plaintiff sues under 42 U.S.C. §§ 1983, 1985, 1986 and 1988 for damages, declarative, and injunctive relief against Defendants, in their official and personal capacities, alleging political discrimination in violation of the First, Fifth, Ninth, and Fourteenth Amendments of the U.S. Constitution; discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 1210–12213, and the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. §§701 *et seq.*; as well as Equal Protection and Due Process violations of the Fourteenth Amendment. (Docket No. 1 at 15–19.)  Plaintiff also claims relief under Puerto Rico law, including 1 L.P.R.A. § 501, 29 L.P.R.A. §§ 146–151, 29 L.P.R.A. §194; and Puerto Rico's tort provision ("Article 1802"), 31 L.P.R.A. § 5141. (Id. at 21–22.)  Defendants move for dismissal under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). (Docket No. 28.)  Plaintiff opposes (Docket No. 37), and Defendants respond (Docket No. 42).

**I.**

**Factual Allegations**

Since 1990, Plaintiff has worked for the Department of State of the Commonwealth of Puerto Rico ("DOS"). (Docket No. 1 at 4–5.)  Plaintiff is a member of the Popular Democratic Party ("PDP"). (Id. at 6.)  Defendants include the Commonwealth of Puerto Rico; the DOS; the Secretary of State of the Commonwealth, Kenneth McClintock-Rodríguez ("McClintock"); the Deputy Secretary of State, José Rodríguez-Suárez ("Rodríguez"); as well as various other employees of the DOS. (Id. at 5–6.)  Blanca López-Agudo ("López") is a Foreign Affairs Specialist at the DOS; José Negrón-Pantojas ("Negrón") is International Affairs Officer; Eduardo Arosemena-Muñoz ("Arosemena") is Assistant Secretary of State for Services;  Consuelo Figueras-Revuelta ("Figueras") is International Affairs Specialist; Nivia E. Torres-Ocasio ("Torres") is Human Resources Director; Edna Coira-Aponte ("Coira") is Human Resources

Civil No. 10-2287 (JAF)                                                                                                    -2-

Specialist; Dwight Fagundo-Cruz ("Fagundo") is Special Assistant to Assistant Secretary Arosemena; and Vanessa Viera-Rabelo ("Viera") is Under Secretary of State. (Id. at 5.)

Plaintiff claims that, beginning in 1993, during the New Progressive Party ("NPP") administration of then-Governor Pedro Rosselló (1990 to 2000), she became the victim of "persecution, retaliation, discrimination." (Id. at 7.) The NPP is the rival party of the PDP, of which Flores is a member. Plaintiff alleges that Rodríguez orchestrated a campaign to make her life at work "miserable." (Id. at 8.) Plaintiff further alleges that "prior to, and since the beginning of this political administration (January 2009), defendants have marginalized, slandered, persecuted, retaliated, and discriminated" against her. (Id. at 6.) The current administration that Plaintiff refers to is also controlled by the NPP. (Id. at 7.) Plaintiff's allegations do not make clear whether any discrimination occurred between 1993 and 2008. (Id. at 7-8.)

Plaintiff alleges that beginning in 2008, Defendants transferred her, assigning her duties incommensurate with her qualifications and position as International Affairs Specialist. (Id. at 6.) She alleges that her former duties were reassigned to employees with lower ranks and qualifications. (Id. at 10.) Plaintiff also alleges that Defendants mocked her and denied her legally-entitled retirement benefits. Plaintiff claims Defendants did all this because of Plaintiff's political affiliation. (Id. at 11–14)   Plaintiff also alleges that Defendants refused to reinstate a reasonable accommodation and discriminated against her due to her purported disability. (Id. at 15–17.) Specifically, Plaintiff alleges that Defendants withdrew equipment and office space that had previously been provided to accommodate her arm, back, and knee ailments. (Id. at 12.)

Plaintiff's complaint makes the following allegations against individual defendants. In February 2010, Rodríguez assigned Plaintiff to perform clerical duties in the Auxiliary Secretariat for Services at the DOS, a Secretariat that he directed. (Id. at 8.) When Plaintiff asked Rodríguez why she was being assigned duties inferior to her qualifications, Rodríguez "responded, sarcastically, that she had to diversify." (Id.)

Arosemena, as Assistant Secretary of State for Services, supervised Plaintiff in her new role after she was transferred to the Auxiliary Secretariat for Services. (Id.) Plaintiff requested to Arosemena transfers to other positions for which she was better qualified, as well as clearer instructions regarding her job duties. (Id. at 9–10.) Arosemena ignored her requests, belatedly provided her with instructions, and later transferred her to another role in the Office of Trademark where Plaintiff had no duties to perform. (Id. at 9–11.)

Fagundo, Special Assistant to Arosemena and the person in charge of Passport and Corporate Services, "mistreated, retaliated and mocked" Plaintiff. He did this by criticizing her work, job performance and speaking abilities, and by refusing to provide her with instructions regarding her job duties in her new role. (Id. at 11.)

On May 24, 2010, Plaintiff sent Viera an email requesting a meeting. (Id. at 12.) The purpose of the meeting was for Plaintiff to explain her grievances related to her treatment at work, the failure to reinstate her reasonable accommodation, and her "constructive demotion." (Id.) Viera ignored the email and refused to meet with Plaintiff. (Id.) Plaintiff then met with Torres, Human Resources Director at DOS. According to the complaint, Torres refused to listen to Plaintiff's statements and "made a scene, in order to convey the impression that plaintiff was being disrespectful." (Id. at 13.) Together with Coira, Torres allegedly also denied Plaintiff her legally-entitled retirement benefits, all because of Plaintiff's political affiliation. (Id.) Coira also allegedly allowed other employees to recover retirement benefits, while denying the same to Plaintiff. (Id. at 14.)

## II.

## Standard for a Motion to Dismiss Under 12(b)(6) and 12(b)(1)

A defendant may move to dismiss an action, based solely on the complaint, for the plaintiff's "failure to state a claim upon which relief can be granted."[1] Fed. R. Civ. P. 12(b)(6). In assessing such a motion, we "accept[] all well-pleaded facts as true, and we draw all reasonable inferences in favor of the [plaintiff]." Wash. Legal Found. v. Mass. Bar Found., 993 F.2d 962, 971 (1st Cir. 1993).

"[A]n adequate complaint must provide fair notice to the defendants and state a facially plausible legal claim." Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011). In considering a complaint's adequacy, we disregard "statements in the complaint that merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action." Id. (internal quotation marks omitted). We then take as true what remains, "[n]onconclusory factual allegations . . . even if seemingly incredible." Id. On the basis of those properly pled facts, we

---

[1] Defendants bring a 12(b)(1) motion, characterizing it as a challenge to our subject-matter jurisdiction. For the sake of clarity, we note that failure to exhaust administrative remedies does not implicate subject-matter jurisdiction and we, therefore, treat this challenge as an argument that Plaintiff has failed to state a claim for relief. See Zipes v. TWA, 455 U.S. 385, 395 n.12 (1982) (explaining that timeliness does not implicate subject-matter jurisdiction in Title VII cases); Vera v. McHugh, 622 F.3d 17, 29–30 (1st Cir. 2010) (noting that failure to exhaust administrative remedies is not jurisdictional in Title VII cases).

assess the "reasonableness of the inference of liability that the plaintiff is asking the court to draw." Id. at 13.

### III.
### Analysis

We consider Plaintiff's federal claims before turning to her claims under Puerto Rico law.

**A.   Section 1983**

Defendants argue that Plaintiff has failed to state a prima-facie case under § 1983 and that Defendants are in any case entitled to immunity from the claims. (Docket No. 28 at 12, 37–40.) "Section 1983 provides a private right of action against state actors—that is, public officials acting under color of state law—who deprive individuals of rights confirmed by federal constitutional or statutory law." Camilo-Robles v. Zapata, 175 F.3d 41, 43 (1st Cir. 1999).

Defendants argue that Plaintiff fails to state a claim under § 1983 because the Complaint (1) fails to allege the direct personal involvement of any of the defendants; and (2) states no deprivation of rights under the First or Fourteenth Amendments. (Docket No. 28 at 9, 13.) For the reasons discussed below, we agree with Defendants' first argument with respect to some, but not all, of the individual defendants. With respect to Defendants' second argument, we agree that Plaintiff has failed to state a claim under the First, Ninth or Fourteenth Amendments.

**1.   Causation**

"Public officials may be held liable under § 1983 for a constitutional violation only if a plaintiff can establish that his or her constitutional injury 'resulted from the direct acts or omissions of the official, or from indirect conduct that amounts to condonation or tacit authorization.'" Ocasio-Hernández, 640 F.3d at 16 (quoting Rodriguez-Garcia v. Miranda-Marin, 610 F.3d 756, 768 (1st Cir. 2010)). This standard can be met by a defendant "setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." Sanchez v. Pereira-Castillo, 590 F.3d 31, 50 (1st Cir. 2009). Keeping in mind that Plaintiff may not have the whole factual record at her disposal at this early stage of the proceedings, we must "draw on our 'judicial experience and common sense' as we make a contextual judgment about the sufficiency of the pleadings." Id. at 48 (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1940 (2009)).

Defendants argue there can be no liability under § 1983 because "the Complaint fails to identify the individual acts (or degree of participation) of each defendant." (Docket No. 28 at 15.) We analyze this claim with respect to each individual defendant.

### a. McClintock, López, Figueras, Negrón

With respect to McClintock, we find that Plaintiff has failed to state the requisite personal involvement. Plaintiff offers no supporting factual allegations as to McClintock's role in the decision-making process. The Complaint merely states that McClintock was aware of, and approved, the reassigning of Plaintiff to duties for which she was overqualified; and that he appointed under-qualified employees to replace her, "because of plaintiff's political affiliation." (Docket No. 1 at 5, 7, 8, 11.) We find that these "bare assertions, much like the pleading of conspiracy in Twombly, amount to nothing more than a 'formulaic recitation of the elements' of a constitutional [tort]."  Maldonado v. Fontanes, 568 F.3d 263, 274 (1st Cir. 2009) (quoting Iqbal, 129 S. Ct. at 1951) (internal quotations omitted). Without any further explanation or factual development, Plaintiff's "threadbare allegation bears insignia of its speculative character," and cannot get past the pleadings stage. Peñalbert-Rosa v. Fortuño-Burset, 631 F.3d 592, 595 (1st Cir. 2011) (dismissing plaintiff's unsupported allegations that Governor and two high-ranking officials participated in the firing of plaintiff). Conclusory allegations of McClintock's involvement are doomed by a line of First Circuit decisions that "since Iqbal have several times found unadorned factual assertions to be inadequate." Id. at 595 n.2 (citing Sanchez, 590 F.3d at 49).

We also find the allegations of personal involvement lacking for López, Figueras, and Negrón. With respect to López and Figueras, Plaintiff alleges that they, along with Negrón and others, engaged in "'mobbing', that is mocking and defaming and placing plaintiff in [a] bad light at her work place." (Docket No. 1 at 11.) Plaintiff gives no details in support or to help make sense of this allegation. This is the only allegation in the complaint that mentions López and Figueras. (Id.) Plaintiff also alleges that Defendants assigned her former position to Negrón, despite his inferior qualifications. (Id. at 10.) There is no allegation that Negrón was actively involved in the decision to strip her of her duties; rather, Plaintiff states only that Negrón was assigned to her former position. (Id.) This does not suggest that Negrón himself acted to deprive Plaintiff of her legal rights. Plaintiff has, thus, failed to state the requisite personal involvement for López, Figueras and Negrón.

### b. Rodríguez, Arosemena, Fagundo, Viera, Torres, Coira

With respect to the remaining individual codefendants–Rodríguez, Arosemena, Fagundo, Viera, Torres, and Coira–we find that Plaintiff has stated sufficient personal involvement in the

Civil No. 10-2287 (JAF)                                                                                                          -6-

alleged employment action. As discussed above in Part I, Plaintiff alleges that each of the above codefendants played a role in the supervision or reassignment of Plaintiff.

These allegations are sufficient to state the personal involvement of Rodríguez, Arosemena and Fagundo in the disputed employment action. Unlike the other individual defendants in this case, these defendants allegedly had supervisory responsibilities over Plaintiff, and had direct conversations with her regarding her transfer. According to the Complaint, they each had at least some direct, personal authority over Plaintiff's contested employment situation.

The same is true of codefendants Viera, Torres, and Coira. As discussed above in Part I, Plaintiff has alleged that Viera, Torres, and Coira denied Plaintiff reasonable accommodation, ignored her grievances, and denied her retirement benefits. We find these allegations are sufficient to state the personal involvement of Viera, Torres, and Coira. Each was on notice of Plaintiff's belief that she was the victim of unlawful discrimination. According to the complaint, none took action to remedy this adverse employment situation.

### 2. Prima-Facie Case

Defendants argue that Plaintiff has failed to state a prima-facie case of political discrimination under the First Amendment and that their Fourteenth Amendment claims fail, as the alleged discrimination should be analyzed exclusively under the First Amendment. (Docket No. 28 at 30–31.) For the reasons set forth below, we agree with Defendants' arguments and find that Plaintiff has failed to state a prima-facie case of political discrimination.

### a. First Amendment

> An actionable claim of political discrimination consists of four elements: '(1) that the plaintiff and defendant have opposing political affiliations, (2) that the defendant is aware of the plaintiff's affiliation, (3) that an adverse employment action occurred, and (4) that political affiliation was a substantial or motivating factor for the adverse employment action.'"
> Ocasio-Hernández, 640 F.3d at 13 (quoting Lamboy-Ortiz v. Ortiz-Vélez, 630 F.3d 228, 239 (1st Cir. 2010)).

Defendants argue that Plaintiff has failed to state a claim under elements (1), (2), and (4)—opposing political affiliations, knowledge, and discriminatory animus. (Docket No. 28 at 10–12.) We agree with respect to knowledge.[2]

---

[2] Defendants are correct that Plaintiff has failed entirely to plead the first element, opposing political affiliations. (Docket No. 28, at 10.) Plaintiff concedes this in her Response in Opposition to Defendants' Motion to Dismiss ("Response"). (Docket No. 37 at 10–12.) Plaintiff states that if the Court finds this element of political affiliation lacking, Plaintiff "would request leave to file the corresponding amended complaint." (Id.) We would not grant leave to amend, because we find that even if Plaintiff did plead this first element, her complaint would still not survive a Motion to Dismiss, because of Plaintiff's failure to plead the second element of knowledge adequately.

The second element of a prima-facie case for political discrimination is Defendants' knowledge of a plaintiff's political affiliation. Defendants recount allegations regarding their knowledge of Plaintiff's political affiliation and argue that we must disregard them as merely "conclusory." (Docket No. 28 at 11.) We agree. Plaintiff's complaint is a laundry list of "legal conclusion[s] couched as...fact[]" and "threadbare recitals of the elements of a cause of action." Ocasio-Hernández, 640 F.3d at 23–24 (quoting Iqbal, 129 S. Ct. at 1949) (internal quotation marks omitted). For example, one of Plaintiff's bald allegations reads, "defendants...discriminated against plaintiff due to her political beliefs and her political party registration and affiliation, known to all defendants in this case." (Docket No. 1 at 2.) Without more factual allegations or details, this claim cannot survive a motion to dismiss under the pleading standards announced by the First Circuit in Ocasio-Hernández. 640 F.3d at 23–24. The complaint lacks any non-conclusory factual allegations stating that Defendants knew of Plaintiff's political affiliation. See Jimenez-Gonzalez v. Alvarez-Rubio, 683 F. Supp. 2d 177, 183 (D.P.R. 2010) (dismissing as "bare allegation" plaintiffs' claim that defendant supervisors knew of their political affiliation due to a political dispute plaintiffs had that was brought to defendants' attention).

Nor is this a case in which a court could reasonably infer from the facts that Defendants knew of Plaintiff's affiliation. See Ocasio-Hernández, 640 F.3d at 23–24 (instructing courts to evaluate plaintiff's claim based on the "cumulative effect" of all the facts alleged). Plaintiff is a low-level, career employee at the DOS. (Docket No. 1 at 5.) There is no suggestion that Plaintiff had held any political positions, elected or appointed. Plaintiff does not state that she participated openly in any political activity. Unlike the facts in Ocasio-Hernández, there is no indication that Defendants inquired into the circumstances of her hire or made disparaging remarks about the previous administration. 640 F.3d at 33. Rather, this case fits with a number of cases in which plaintiffs' conclusory allegations regarding defendants' knowledge were deemed insufficient to state a claim. See Jimenez-Gonzalez, 683 F. Supp. 2d at 183 (finding insufficient plaintiffs' allegations that their defendant supervisors knew of their political affiliation because of a political dispute brought to supervisors' attention); Del Toro-Pacheco v. Pereira-Castillo, 662 F. Supp. 2d 202, 216 (D.P.R. 2009) (finding insufficient plaintiff's claim that defendants knew of his political affiliation because plaintiff had held a trust position in a previous administration); Rivera-Feliciano v. State Ins. Fund. Corp., 652 F. Supp. 2d. 170, 186 (D.P.R. 2009) ("Plaintiff's general allegation that he is an active member of the NPP and that his affiliation is well known by Defendants simply will not do.").

### b. Fourteenth Amendment

Defendants argue that Plaintiff cannot sustain a claim under the Due Process or Equal Protection Clauses of the Fourteenth Amendment. (Docket No. 28 at 28–29.) Defendants construe Plaintiff's due process claim as one of procedural due process, arguing that employees have no protected property interest in their job duties. (Id. at 29.) Defendants also argue that Plaintiff has failed to state an equal protection claim, because all political discrimination claims should be analyzed under the First Amendment.[3] (Id. at 30–31.) Plaintiff fails to address any of these arguments in her Response. (See Docket No. 37 at 2.) We analyze the First Amendment argument before turning to the procedural due process argument.

In Pagán v. Calderón, the First Circuit explained that "[i]t is the First Amendment, not the Fourteenth Amendment, that guards individuals against state-sponsored acts of political discrimination," 448 F.3d 16, 33–34 (1st Cir. 2006), and stated specifically that allegations of political discrimination cannot serve as a basis for a substantive due process or equal protection claim, id. at 36. This rule "depends only on whether a specific constitutional provision addresses the type of conduct at issue," and not on whether the plaintiff will be successful under that provision. Id. at 34. Therefore, any claims relating to political discrimination should be analyzed exclusively under the First Amendment.

Allegations of political discrimination cannot serve as a basis for a substantive due process claim. Id. Therefore, any remaining claims under the Due Process Clause of the Fourteenth Amendment would necessarily be for procedural, rather than substantive, due process. Plaintiff has not alleged that she lost her employment, salary or title. Rather, Plaintiff claims her job duties were taken from her and that she was reassigned to perform tasks below her qualifications. (Docket No. 1 at 8.) To state a claim under procedural due process, a plaintiff must allege that she was deprived of something in which she held a property interest, without due process. Torres-Martinez v. P.R. Dept. Of Corr., 485 F.3d 19, 24–25 (1st Cir. 2007). The First Circuit has held that public employees have no property interest in their job duties. Id. Therefore, Plaintiff has failed to state a claim under the Fourteenth Amendment.

### c. Ninth Amendment

We also dismiss Plaintiff's claims under the Ninth Amendment. Plaintiff's Complaint mentions the Ninth Amendment twice, almost in passing, with no explanation whatsoever.

---

[3] Defendants argue, additionally, that Plaintiff has failed to state a prima-facie, equal-protection violation. (Docket No. 28 at 29–30.) We do not reach this argument, because we agree with Defendants' second argument that the claim should be analyzed exclusively under the First Amendment.

(Docket No. 1 at 3, 16.) The Ninth Amendment to the U.S. Constitution reads, "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const. Amend. IX. We can see no reason why this language applies to the facts of this case. Without any supporting legal or factual argument, Plaintiff's claim under the Ninth Amendment fails. U.S. v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") see also Diaz-Ortiz v. Diaz-Rivera, 611 F. Supp. 2d 134, 148 (D.P.R. 2009) (dismissing plaintiff's political discrimination claim under the Ninth Amendment).

**B.     Section 1985**

Defendants argue that Plaintiff has failed to state a prima-facie case for conspiracy, and that political discrimination claims are not actionable under § 1985. (Docket No. 28 at 31–32.) Defendants further argue that because Plaintiff's § 1985 claims are barred, no § 1986 claims can survive, since § 1986 creates liability for failure to prevent a conspiracy under § 1985. (Id.) Plaintiff does not respond to any of these arguments. (Docket No. 37.) We agree with Defendants.

Though Plaintiff does not state which subsection of §1985 grounds her claim, the facts and wording of the complaint suggest § 1985(3) as the only subsection that relates to Plaintiff's claim. Plaintiff's complaint, which alleges that "Defendants have acted...in depriving Plaintiff of her rights under the First Amendment," (Docket No. 1 at 18), tracks the language of § 1985(3), titled "Depriving Persons of Rights or Privileges." We, therefore, treat Plaintiff's claims under § 1985 as arising under § 1985(3).

In Perez-Sanchez v. Public Building Authority, 531 F.3d 104, 109 (1st Cir. 2008), the First Circuit held that "§ 1985(3) provides no remedy for animus on the basis of political beliefs." Therefore, Plaintiff's claims under § 1985 fail. Because no claim exists under § 1985, any remaining claims under § 1986 must also fail. Having failed to establish a federal claim, Plaintiff's § 1988 claim for attorney's fees will also be dismissed.

**C.     Rehabilitation Act and ADA Claims**

Defendants argue that Plaintiff's failure to file an administrative complaint with the Equal Employment Opportunity Commission ("EEOC") strips this court of subject-matter jurisdiction to hear Plaintiff's claims under Titles I and V of the ADA, as well as her claims under the Rehabilitation Act. (Docket No. 28 at 8.) Plaintiff responds that there is no administrative

Civil No. 10-2287 (JAF)                                                                                         -10-

exhaustion requirement under Title V of the ADA or the Rehabilitation Act. (Docket No. 37 at 6.) We address each argument in turn.

### 1.     Title I of the ADA

We note that in a suit under Title I of the ADA, the "charge-filing requirement, while obligatory, is not jurisdictional."[4] Bonilla v. Muebles J.J. Alvarez, 194 F.3d 275, 278 (1st Cir. 1999) (citing Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982)). "Rather, it is more akin to a statute of limitations and, therefore, subject to the usual gamut of equitable exceptions." Id. Courts should employ equitable tolling "sparingly"; the doctrine of equitable tolling will generally be available only if the plaintiff demonstrates circumstances beyond her control that prevented her from filing, such as an employer's efforts to mislead her. Id. Absent special circumstances, "a plaintiff's unexcused failure to exhaust her administrative remedies effectively bars the courthouse door."[5] Jorge v. Rumsfeld, 404 F.3d 556, 564 (1st Cir. 2005).

In this case, Plaintiff did not file her claim with the EEOC before bringing her suit to this court. Nor has Plaintiff alleged any extraordinary circumstances that prevented her from doing so. Therefore, we agree with Defendants' argument that Plaintiff's claims under Title I of the ADA are barred.

### 2.     Title V of the ADA

Plaintiff alleges that Defendants retaliated against her in violation of Title V of the ADA, which proscribes retaliation. (Docket No. 1 at 21.) She claims that when Defendants withdrew a "reasonable accommodation" provided for her alleged disability, she requested the accommodation be reinstated. (Id. at 17.) Plaintiff alleges that Defendants then refused to reinstate the accommodation, and retaliated against her for making this request. (Id.) Defendants argue that Plaintiff's failure to file this claim before the EEOC bars her suit here. (Docket No. 28 at 32.) We agree.

The relevant section of Title V provides, "The remedies and procedures available under sections 12117, 12133 and 12188 of this title shall be available to aggrieved persons for violations of subsections (a) and (b) of this section, with respect to subchapter I, subchapter II and subchapter III of this chapter, respectively." 42 U.S.C. § 12203(c). In other words, the remedies

---

[4] We, therefore, treat Defendants' claims as arguments that Plaintiff has failed to state a claim.

[5] Although Jorge, 404 F.3d 556, involved a suit under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, the analysis under Title I of the ADA is the same. See Bonilla, 194 F.3d at 277 (finding that Title I of the ADA incorporates the employment provisions of Title VII of the Civil Rights Act, requiring exhaustion of administrative remedies).

Civil No. 10-2287 (JAF)                                                                                          -11-

and procedures that apply to Title V retaliation claims depend on which Title is the source for the plaintiff's underlying claim. See McInerney v. Rensselaer Polytechnic Inst., 505 F.3d 135, 138 (2nd Cir. 2007) ("Title V retaliation claims in the employment context require the same procedures as those under Title I").

Plaintiff claims that Defendants retaliated against her because of her request for reasonable accommodation in her place of employment. The original request falls within Title I, which regulates employment. 42 U.S.C. § 12112. Therefore, the remedies and procedures that apply to Plaintiff's Title V claim are the same ones that apply to her Title I claim. These procedures, contained in 42 U.S.C. § 12117, require plaintiffs to file charges with the EEOC before bringing a claim to federal court. See Bonilla, 194 F.3d at 278. This plaintiff has failed to do; her suit is, therefore, barred.[6]

### 3. Rehabilitation Act

Plaintiff alleges unlawful discrimination under the Rehabilitation Act. (Docket No. 1 at 16–18.) Defendants contend that Plaintiff's failure to exhaust her administrative remedies bars her suit. (Docket. No. 28 at 32.) We agree.

The First Circuit has held that the Rehabilitation Act requires plaintiffs to exhaust administrative remedies before filing suit in federal court. See Roman-Martinez v. Runyon, 100 F.3d 213, 216 (1st Cir. 1996); Nunnally v. MacCausland, 996 F.2d 1, 2 (1st Cir. 1996). Because plaintiff failed to file an administrative complaint with the EEOC, her claim under the Rehabilitation Act is barred.[7]

### D. Puerto Rico Claims

Plaintiff also brings claims arising under Puerto Rico Law. (Docket No. 1 at 21–23.) The jurisdictional basis for maintaining Plaintiff's Puerto Rico claims has been undermined by

---

[6] Defendants also argue that Plaintiff has failed to state a prima facie-case under the ADA and Rehabilitation Act. (Docket No. 28 at 33–34.) Because we dismiss Plaintiff's claim for failure to exhaust administrative remedies, we do not reach this argument.

[7] Defendants present several additional arguments in favor of dismissal. Defendants argue that Plaintiff's claims are time-barred by Puerto Rico's one-year statute of limitations, 31 L.P.R.A. § 5298(2) (Docket No. 28 at 36); by Plaintiff's failure to comply with Puerto Rico's notice statute, 32 L.P.R.A. § 3077 (id. at 41–42); and by sovereign and qualified immunity (id. at 37–40). Because we dismiss Plaintiff's federal claims for failure to state a prima-facie case and failure to exhaust administrative remedies, we do not reach Defendants' additional arguments. See McBee v. Delica, Co., Ltd., 417 F.3d 107, 127 (1st Cir. 2005) (instructing courts not to reach sovereign immunity or other complex issues if the claim can be dismissed on the merits).

dismissal of her federal claims.  Accordingly, those supplemental Commonwealth claims are **Dismissed Without Prejudice** pursuant to 28 U.S.C. § 1367(c)(3).

### IV. Conclusion

Given the foregoing, we hereby **GRANT** Defendants' Motion to Dismiss pursuant to Rule 12(b)(6).  (Docket No. 28.)  We **DISMISS WITH PREJUDICE** Plaintiff's political discrimination claims under §§ 1983, 1985, 1986, 1988 and the First, Fifth, Ninth, and Fourteenth Amendments of the U.S. Constitution.  We **DISMISS WITHOUT PREJUDICE** Plaintiff's claims under the ADA and Rehabilitation Act and Plaintiff's Puerto Rico law claims.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 27th day of October, 2011.

> s/José Antonio Fusté
> JOSE ANTONIO FUSTE
> U.S. District Judge